UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JASON M. HOWARD,

Petitioner,

v.

9:25-CV-0619 (LEK)

LYNN LILLEY,

Respondent.

---

APPEARANCES: OF COUNSEL:

JASON M. HOWARD
Petitioner, pro se
16-B-2985
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403

HON. LETITIA JAMES
Attorney for Respondent
New York State Attorney General
28 Liberty Street
New York, New York 10005

JAMES FOSTER GIBBONS, ESQ.
Ass't Attorney General

LAWRENCE E. KAHN
Senior United States District Judge

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Petitioner Jason M. Howard seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."). On December 11, 2025, Respondent moved for leave to file a limited answer addressing only the issue of timeliness, supported by a memorandum of law and various state court records. Dkt. No. 10, Limiting Motion; Dkt. No. 10-2, Memorandum of Law in Support of the Limiting Motion; Dkt. No. 11, State Court Records ("SR"); Dkt. No. 11-1 at 1–494, State Court Trial

Transcript ("T."); Dkt. No. 11-1 at 495–519, Sentencing Transcript ("S."); Dkt. No. 11-1 at 520–23, Resentencing Transcript ("R.").[1] On December 17, 2025, the Court granted Respondent's Limiting Motion and afforded Petitioner thirty days to file a reply limited to addressing the issue of timeliness. Dkt. No. 12, Text Order (granting motion). Petitioner filed a reply. Dkt. No. 13, Reply.[2] For the reasons which follow, the Petition is dismissed as untimely.

## II. RELEVANT BACKGROUND

### A. The Indictment

On July 1, 2016, an Albany County grand jury indicted Petitioner, charging him with the following crimes: Burglary in the Second Degree (Penal Law § 140.25(2)); three counts of Sexual Abuse in the First Degree (Penal Law § 130.65(2)); Strangulation in the Second Degree (Penal Law § 121.12); Criminal Obstruction of Breathing or Blood Circulation (Penal Law § 121.11); and Petit Larceny (Penal Law § 155.25). SR 114–20.

### B. The Trial

On January 3, 2017, Petitioner's jury trial commenced in Albany County Court before the Honorable Thomas Breslin. *Id.* at 141.

#### 1. The People's Case

[1] With the exception of the State Court Record ("SR"), the Trial Transcript ("T."), and the Sentencing Transcript ("S."), citations to all parties 'filings refer to the pagination generated by CM/ECF, the Court's electronic filing system. Citations to the State Court Record ("SR") reference the Bates-stamp at the bottom of each page, and citations to the Trial Transcript ("T."), Sentencing Transcript ("S."), and Resentencing Transcript ("R.") reference the transcript page in the top-right corner of each page, with the first page of the trial transcript beginning on CM/ECF page 22 and the first page of the sentencing transcript beginning on CM/ECF page 495, for example.

[2] Thereafter, Respondent filed additional portions of the state court transcript. *See* Dkt. No. 14.

In June 2015, Petitioner met a woman, hereinafter referred to as the victim, and the two became friends and initiated a sexual relationship. T. 255–56. The victim repeatedly declined Petitioner's request for a committed relationship. *Id.* at 256–57.

On September 29, 2015, Petitioner was at the victim's apartment when she received a telephone call from another man. *Id.* at 258, 261. Petitioner heard the victim tell the caller that she did not have a boyfriend and slapped the telephone out of the victim's hand. *Id.* at 261–62. In response, the victim demanded that Petitioner leave her home. *Id.* at 262–63. Petitioner refused, pushed her into a wall, then laid on top of her, choked her and threatened to kill her. *Id.* at 263–65.

Although the victim subsequently called the police, she ceased cooperating with the police investigation after Petitioner apologized to her. *Id.* at 271–73.

In December 2015, the victim refused Petitioner's requests to spend Christmas together, telling him that she intended to spend the holiday with her family. *Id.* at 276–77. On the evening of December 25, 2015, Petitioner called the victim and told her that he was on the bus on his way to Albany. *Id.* at 277–78. The victim picked Petitioner up at the bus stop. *Id.* at 278–79.

Later that night, the victim and Petitioner went to the victim's apartment. *Id.* at 279. The victim showered, told Petitioner she needed to take a nap, and then fell asleep. *Id.* at 279–80. The victim awoke to find Petitioner's penis in her hand. *Id.* at 281. The victim sat up, Petitioner accused her of showering because she had had sex with another man, and the victim responded that she did not feel comfortable with him in the apartment. *Id.* After further discussion, the victim moved to the couch where she fell asleep. *Id.* at 284–85. Later that night, the victim moved from the couch to the bed to sleep. *Id.* at 285.

The next morning, as the victim arose out of bed to adjust her fan, Petitioner grabbed her by the neck, threw her back down on the bed, and stated, "I suggest you lay the fuck down." *Id.* at 286–87.

Petitioner used his legs to pry apart the victim's legs, forced his hand into her underwear, and inserted his fingers into her vagina. *Id.* at 287–88. When the victim asked Petitioner if he planned to rape her, he choked her. *Id.* The victim banged on the wall for help. *Id.*

Petitioner stopped choking and restraining the victim, got up from the bed, pulled the victim to the end of the bed, rubbed her breasts, then grabbed her by the arm and brought her into the living room. *Id.* at 289–90. Once in the living room, Petitioner began ranting and the victim screamed. *Id.* at 290–91.

Eventually, Petitioner took twenty dollars from the victim's wallet, stating that she would pay him for his time. *Id.* at 292. Petitioner told the victim that this is what she wanted, because she liked to be treated "like shit," and that if she were more focused on him rather than on other men, none of this would have happened. *Id.*

The victim left the apartment with Petitioner but, once they reached a public place, she fled to a police station. *Id.* at 295–98. Petitioner texted and called the victim to apologize repeatedly for days. *Id.* at 300, 303.

**2. The Defense Case**

Petitioner testified that he did not care that the victim was dating other men, and that their relationship was "casual." *Id.* at 399–400. Petitioner admitted that he argued with the victim on September 29, 2015, but stated that he did not recall the dispute becoming violent. *Id.* at 406. Petitioner also testified that he and the victim arranged to see each other on Christmas, and the victim gifted him a sweater and cologne. *Id.* at 414, 417.

According to Petitioner, after he and the victim exchanged gifts, they showered together, watched television in the victim's bedroom until Petitioner took a call from another woman in the bathroom, and later argued because the victim heard Petitioner speaking on the telephone with the

woman. *Id.* at 417–19. Petitioner testified that he did not have sexual contact with the victim that night, or discuss sexual activity with her. *Id.* at 418–21. Petitioner stated that the victim initially left the bedroom after their argument because she was angry, and later returned to the bedroom and accused Petitioner of being disrespectful. *Id.* at 419–22.

Eventually, Petitioner fell asleep, awoke to his alarm clock at 8:30a.m., and moved to the bathroom to dress and brush his teeth, at which point the victim verbally revisited their earlier argument before physically attacking him. *Id.* at 422–24. According to Petitioner, the victim hit him and would not stop, so he pushed her back. *Id.* at 424. Petitioner denied choking the victim, placing his fingers in her vagina, and rubbing her breasts. *Id.* at 424.

**C. The Verdict and Sentence**

The jury convicted Petitioner of one count each of second-degree strangulation and first-degree sexual abuse; he was acquitted of the remaining counts. SR 219–20. On March 3, 2017, Petitioner was sentenced as a second felony offender to an aggregate determinate term of 14 years in prison with ten years of post-release supervision. S. 1; SR 005, 022. On June 8, 2017, the court resentenced Petitioner to correct a legal defect in the initial sentence, imposing the same aggregate sentence. R. 1, 3.

**D. Direct Appeal**

Petitioner filed a counseled brief in the Appellate Division, Third Department, claiming that his conviction for second-degree strangulation was inconsistent with his acquittal for criminal obstruction of breathing; that the court should have ruled on his pre-trial pro se motion to dismiss the indictment; and that the evidence of first-degree sexual abuse was legally insufficient. SR 024–44.

On August 21, 2019, the Appellate Division affirmed the judgment of conviction. *People v. Howard*, 175 A.D.3d 1620 (3d Dep't 2019); SR 393–95. On October 30, 2019, the New York Court of Appeals denied leave to appeal. *People v. Howard*, 34 N.Y.3d 981 (2019); SR 396.

**E. Motion to Vacate the Judgment**

By pro se papers dated October 16, 2024, Petitioner moved to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10, claiming (1) evidence presented at trial concerning the victim's injuries violated the Confrontation Clause pursuant to *Smith v. Arizona*, 602 U.S. 779 (2024); and (2) the sentencing court's adjudication of Petitioner as a second felony offender violated his Fifth and Sixth Amendment rights pursuant to *Erlinger v. United States*, 601 U.S. 821 (2024). SR 397–406.

On January 9, 2025, Albany County Court Judge Andra Ackerman denied Petitioner's 440 motion. *Id.* at 451–57. In pertinent part, the court held that *Erlinger* represented a "new rule," notwithstanding that it was an extension of prior caselaw; however, it did not apply retroactively on collateral review. *Id.* at 455–56. The court also held that Petitioner's Confrontation Clause claim was defaulted because it could have been raised on direct appeal. *Id.* at 453 (citing C.P.L. § 440.10(2)).

Petitioner sought leave to appeal to the Appellate Division. *Id.* at 458–65. On March 6, 2025, the Appellate Division denied leave to appeal. *Id.* at 466. Petitioner then moved the Albany County Court to reargue his § 440.10 motion. SR 467–72. On April 9, 2025, the Albany County Court denied the reargument motion. *Id.* at 506–08.

## III. THE PETITION

Petitioner argues that he is entitled to federal habeas relief because (1) he was illegally sentenced as a second felony offender; (2) the People adduced hearsay evidence at trial, in violation of his rights under the Sixth Amendment to confront an adverse witness and receive a fair; and (3) his conviction of Second Degree Strangulation was not supported by the evidence and inconsistent with the jury finding him not guilty of criminal obstruction of breathing. *See* Pet. 5–7.

Respondent opposes the Petition, arguing that the case should be dismissed because the action is untimely. Dkt. No. 10-2 at 3–17.

Liberally construing Petitioner's reply, he argues that his petition should be deemed timely because *Smith* and *Erlinger* each created a new law applicable to his case, which entitles him to an alternate accrual date for statute of limitations purposes. *See generally*, Reply.

## IV. DISCUSSION

### A. Statutory Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April 24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the conviction became final by the conclusion of direct review or by the expiration of the time to seek direct review. *See* 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 148 n.9, 149–50 (2012). For petitions that pursue direct review all the way, the one-year period begins when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *See Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 548–49 (2d Cir. 2009); *McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (citing U.S. Sup. Ct. R. 13(1)).[3]

---

[3] In light of the global pandemic, the Supreme Court issued a general order declaring that for a lower court decision filed between March 19, 2020, and July 18, 2021, the deadline for applying for certiorari would be temporarily extended from ninety to 150 days. *See* 334 F.R.D. 801 (U.S. Mar. 19, 2020), available at https://www.supremecourt.gov/orders/courtorders/031920zr_d1o3.pdf (extending deadline); U.S. Sup. Ct. Orders Rescinded, 28 U.S.C. (U.S. July 19, 2021), available at https://www.supremecourt.gov/orders/courtorders/071921zr_4g15.pdf (rescinding pandemic-instituted protocols). However, because the Court of Appeals denied Petitioner's application for leave to appeal before the effective date of this general order, the expanded limitations period is inapplicable to this timeliness calculation.

Petitioner was re-sentenced on June 8, 2017. R. 1, 3. On September 12, 2019, the Appellate Division affirmed the judgment of conviction. *People v. Howard*, 175 A.D.3d 1620 (3d Dep't 2019). On October 30, 2019, the New York Court of Appeals denied leave to appeal. *People v. Howard*, 34 N.Y.3d 981 (2019). Petitioner had ninety days to seek certiorari to the United States Supreme Court before his conviction became final. *Gonzalez*, 565 U.S. at 150; *McKinney*, 326 F.3d at 96 (citing U.S. Sup. Ct. R. 13(1)). Because Petitioner did not seek certiorari, his conviction became final the day after his 90-day deadline expired, on January 28, 2020. *See Rose v. Lee*, No. 9:13-CV-299, 2015 WL 729817, at *10 (N.D.N.Y. Feb. 19, 2015) ("If a direct appeal is filed, the judgment of conviction becomes final ninety days after the date that the New York Court of Appeals denies leave to appeal."). Thus, Petitioner had one year from this date to timely file his federal habeas petition.[4]

The present petition is dated April 25, 2025, *see* Pet. 13, which is over four years beyond the expiration of the statutory limitations period.

**B. Statutory Tolling**

28 U.S.C. § 2244(d)(2) provides that the time for filing a habeas petition is tolled during the pendency of any "properly filed application for State post-conviction or other collateral review." Thus, in situations in which a petitioner files an application for collateral review within the one-year federal filing deadline, Section 2244(d)(1)(A)'s limitations period is "tolled during the pendency of [the] properly filed petition." *Bethea v. Girdich*, 293 F.3d 577, 578 (2d Cir. 2002) (citing *Artuz v. Bennett*, 531 U.S. 4, 8–11 (2000), *aff'g Bennett v. Artuz*, 199 F.3d 116 (2d Cir. 1999)). However, "Section

---

[4] According to Rule 6(a) of the Federal Rules of Civil Procedure, "[w]hen a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period." *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998). "The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.'" *Ryan v. Griffin*, No. 9:10-CV-395, 2011 WL 6934269, at *3 (N.D.N.Y. Dec. 30, 2011) (quoting *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003).

2244(d)(2)'s tolling provision . . . does not reset the date from which the one-year statute of limitations begins to run." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Furthermore, such proceedings "cannot revive a time period that has already expired . . . [as t]o allow a belated state court collateral attack to revive the AEDPA limitations period would defeat the purpose of the AEDPA limit." *Hale v. Sabourin*, No. 8-CV-768, 2010 WL 2105934, at *3 (N.D.N.Y. May 4, 2010), *report and recommendation adopted*, No. 8-CV-768, 2010 WL 2044685 (N.D.N.Y. May 24, 2010) (citations omitted) (quoting *Sorce v. Artuz*, 73 F. Supp. 2d 292, 294 (E.D.N.Y. 1999); *see also McGinnis*, 208 F.3d at 17 (explaining that "[i]f the one-year period began anew when the state court denied collateral relief, then state prisoners could extend or manipulate the deadline for federal habeas review by filing additional petitions in state court").

In this case, Petitioner's post-conviction motion was filed on October 16, 2024, more than three and a half years after his AEDPA deadline expired. *See* SR 398. Accordingly, Petitioner is not entitled to any period of statutory tolling under 28 U.S.C. § 2244(d)(2).

## C. Alternate Accrual Date for Commencement of the Statutory Limitations Period

### 1. 28 U.S.C. § 2244(d)(1)(C)

28 U.S.C. § 2244(d)(1)(C) provides for an alternate accrual date where the one-year limitations period commences on "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

In *Erlinger*, the Supreme Court held that only a jury may determine whether a defendant's prior criminal acts were committed on different occasions for purposes of sentencing enhancement under § 924(e)(1), the Armed Career Criminal Act. 602 U.S. at 835. Although *Erlinger* set forth a new rule of criminal procedure, it does not apply retroactively on collateral review. *See Erlinger*, 602 U.S. at 859

n.3 (Kavanaugh, J., dissenting) ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings.") (citing *Edwards v. Vannoy*, 593 U.S. 255, 258 (2021)); *Teague v. Lane*, 489 U.S. 288, 310 (1989) (plurality opinion); *see also United States v. Gallimore*, No. 24-6239, 2026 WL 1847264, at *2 (10th Cir. June 26, 2026) (affirming district court holding that *Erlinger* does not apply retroactively on collateral review); *Whittle v. Anderson*, No. 25-CV-6503, 2026 WL 1480472, at *4 (S.D.N.Y. May 27, 2026) (*Erlinger* does not apply retroactively); *Forrest v. McGuinness*, No. 21-CV-5853, 2025 WL 1677350, at *2 (E.D.N.Y. June 13, 2025) ("While the Second Circuit and courts in this district have not yet considered whether *Erlinger* . . . applies retroactively, the Court agrees with the well-reasoned analysis in *People v. Taylor*, 224 N.Y.S.3d 345, 351–52 (N.Y. Sup. Ct. 2024), that *Erlinger* does not"); *Reed v. United States*, No. 18-CR-01576, 2025 WL 1447308, at *9 (D. N.M. May 20, 2025) (holding that *Erlinger* does not apply retroactively on collateral review and collecting supporting cases). Thus, the Supreme Court's decision in *Erlinger* did not create a new accrual date for Petitioner under 28 U.S.C. § 2244(d)(1)(C).

In *Smith*, the Supreme Court addressed the Confrontation Clause in the context of "a case in which an expert witness restate[d] an absent lab analyst's factual assertions to support his own opinion testimony." 602 U.S. at 783. The Court previously considered the same issue in *Williams v. Illinois*, 567 U.S. 50 (2012), where "[t]he state court held that the testimony did not implicate the Confrontation Clause because the absent analyst's statements were introduced not for their truth, but to explain the basis for the testifying expert's opinion." *Smith*, 602 U.S. at 779 (discussing *Williams*). Although five members of the Court rejected the state court's reasoning, "one of those five affirmed the state court on alternative grounds, [and] Williams lost." *Id.*

The *Smith* Court abrogated *Williams*, explaining that the Sixth Amendment's Confrontation Clause ordinarily "bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her." *Smith*, 602 U.S. at 783 (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). This "prohibition applies in full to forensic evidence." *Id.* Thus, the Supreme Court clarified that "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth," and if those statements are testimonial, they are barred by the Confrontation Clause. *Id*.

Even assuming *Smith* may have announced a new rule of criminal procedure, "[n]ew procedural rules do not apply retroactively on federal collateral review." *Edwards*, 593 U.S. at 272. Therefore, *Smith* also cannot be applied retroactively to Petitioner on habeas review. *See Thompson v. Griffin*, No. 14-CV-1641, 2026 WL 1223962, at *1 (E.D.N.Y. May 5, 2026) (discussing Second Circuit's denial of petitioner's request to file a second successive habeas petition as "the Supreme Court did not issue a new rule of law in *Smith* that was proclaimed to be retroactive"); *Hisler v. Royce*, No. 21-CV-3676, 2025 WL 903847, at *13 (E.D.N.Y. Mar. 25, 2025) (holding that *Smith* does not apply retroactively on federal collateral review); *see also Montanez v. Burle*, No. 21-CV-1293, 2026 WL 91882, at *7 (C.D. Ill. Jan. 13, 2026) ("*Smith* was decided on direct appeal and the Supreme Court did not include any language indicating that it applies retroactively to cases on collateral review.").

Accordingly, the Supreme Court's decision in *Smith* also did not create a new accrual date for Petitioner under 28 U.S.C. § 2244(d)(1)(C).

**2. § 2244(d)(1)(D)**

28 U.S.C. § 2244(d)(1)(D) provides another potentially new accrual date, directing that the one-year limitations period commences on "the date on which the factual predicate of the claim or

claims presented could have been discovered through the exercise of due diligence," in other words, through the discovery of new evidence. The Second Circuit has defined the term factual predicate to mean facts, not merely new conclusions drawn from preexisting facts, which are vital to the underlying claim. *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012). The Supreme Court's decisions in *Smith* and *Erlinger* do not qualify as new factual predicates under § 2244(d)(1)(D). *See McCloud v. United States*, 987 F.3d 261, 265 n.11, 266 (2d Cir. 2021) (recognizing the similarity between 28 U.S.C. § 2255(f)(4) and 28 U.S.C. § 2244(d)(1)(D) with respect to the meaning of "new facts" and holding that "[d]ecisions that change the legal significance of certain facts without modifying them do not qualify under [§ 2255](f)(4)[,]"); *Lo v. Endicott*, 506 F.3d 572, 575 (7th Cir. 2007) (rejecting argument "that a court decision can be a 'factual predicate' within the meaning of § 2244(d)(1)(D)"); *Shannon v. Newland*, 410 F.3d 1083, 1088 (9th Cir. 2005) (an intervening state court decision does not constitute a "factual predicate" within the meaning of § 2244(d)(1)(D) where it "clarified the law, not the facts").

Accordingly, Petitioner is not entitled to any type of alternative accrual date based on the Supreme Court decisions he cited pursuant to 28 U.S.C. § 2244(d)(1)(D).

**D. Equitable Considerations**

**1. Tolling**

The AEDPA's one-year statute of limitations period "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Diaz v. Kelly*, 515 F.3d 149, 153 (2d Cir. 2008). Extraordinary circumstances "have included extraordinary attorney misconduct, . . . the petitioner's mental illness . . . or hospitalization, . . . prolonged delay by a state court in sending a notice of ruling, .

. . and intentional obstruction by prison officials of an inmate's ability to file his petition." *Barrientos v. Lee*, No. 1:14-CV-3207, 2015 WL 3767238, at *9 (S.D.N.Y. June 17, 2015).

> To show that extraordinary circumstances "prevented" him from filing his petition on time, petitioner must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."

*Hizbullanhankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)).

Petitioner does not allege that any extraordinary circumstances prevented him from filing a timely habeas petition. Nor does the record demonstrate the existence of any circumstances that might give rise to a claim for equitable tolling. Thus, Petitioner has failed to establish that equitable tolling saves this action.

**2. Actual Innocence**

Courts have also recognized an equitable exception to the one-year statute of limitations under 28 U.S.C. §2244(d)(1) in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). However, "[o]nce guilt is . . . established . . . a federal habeas court will not relitigate the question of guilt for a state defendant who protests his actual innocence . . . [r]ather, a federal habeas court will review state convictions for constitutional error." *Hyman v. Brown*, 927 F.3d 639, 656 (2d Cir. 2019).

An actual innocence claim will be recognized only in a "narrow class of truly extraordinary cases [where a petitioner can] present[] credible and compelling claims of actual innocence." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 338 (1995) (Rehnquist, J., dissenting)) (internal quotations omitted); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (noting that the actual innocence gateway standard is "demanding and permits review only in the extraordinary case" (internal quotations omitted)). "The

petitioner's burden in making a gateway showing of actual innocence is deliberately demanding." *Hyman*, 927 F.3d at 656 (cleaned up). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup*, 513 U.S. at 324; *see Rivas*, 687 F.3d at 518; *Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536–37 (quoting *Schlup*, 513 U.S. at 327);[5] *see Doe v. Menefee*, 391 F.3d 147, 160–61 (2d Cir. 2004).

Petitioner has failed to allege that he is, factually innocent or present any new evidence that would result in an acquittal.[6] Accordingly, Petitioner has failed to establish an equitable exception that will save his petition from being time-barred.

---

[5] *Schlup* and *House* involved procedurally defaulted claims. *McQuiggan*, 569 U.S. at 386. The Supreme Court in *McQuiggan* held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations." *Id.*

[6] Further, liberally construing the instant action to infer such an argument would be similarly unsuccessful. The proof at trial established Petitioner's factual guilt. Specifically, the victim testified that Petitioner choked and sexually assaulted her. T. 286–90. This testimony was supported by Petitioner's text messages and police photographs of the victim's injuries. *Id.* at 308–09, 317–20. The jury was free to credit the victim's testimony over Petitioner's testimony to the contrary. *See United States v. Strauss*, 999 F.2d 692, 696 (2d Cir. 1993) ("[T]he jury is exclusively responsible for determining a witness' credibility."); *Moye v. Corcoran*, 668 F. Supp. 2d 523, 539 (W.D.N.Y. 2009) ("Neither on direct appeal nor on federal habeas is a court reviewing a sufficiency of the evidence claim permitted to revisit the factfinder's determinations as to the witnesses' credibility and veracity." (citing *Strauss*, 999 F.2d at 696; *Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981))). Petitioner has provided no new evidence to demonstrate his innocence. *See House*, 547 U.S. at 537 (evidence introduced at trial does not constitute new evidence). Moreover, Petitioner's challenges to the legal sufficiency of the evidence do not meet the *Schlup* standard. *See Bousley v. United States*, 523 U.S. 614, 623 (1998) ("actual innocence means factual innocence, not mere legal insufficiency" (cleaned up)); *Nickels v. Conway*, No. 10-CV-413, 2015 WL 4478970, at *8 (W.D.N.Y. July 22, 2015).

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Petition, Dkt. No. 1, is **DENIED and DISMISSED** in its entirety**;** and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and it is further

**ORDERED**, that any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: October 19, 2026
Albany, New York

LAWRENCE E. KAHN
United States District Judge

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if a court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).